WSA Group, PE-PC v DKI Eng'g & Consulting USA PC (2019 NY Slip Op 09339)





WSA Group, PE-PC v DKI Eng'g & Consulting USA PC


2019 NY Slip Op 09339


Decided on December 26, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 26, 2019

527709

[*1]WSA Group, PE-PC, Appellant- Respondent,
v
DKI Engineering & Consulting USA PC, Respondent- Appellant.

Calendar Date: November 14, 2019

Before: Garry, P.J., Clark, Mulvey, Pritzker and Reynolds Fitzgerald, JJ.


Hodgson Russ LLP, Buffalo (Michelle L. Merola of counsel), for appellant-respondent.
Wilson, Elser, Moskowitz, Edelman & Dicker LLP, Albany (Christopher A. Priore of counsel), for respondent-appellant.



Garry, P.J.
Cross appeals from an order of the Supreme Court (Platkin, J.), entered September 20, 2018 in Albany County, which partially granted defendant's motion to dismiss the complaint.
In March 2012, plaintiff entered into a subcontract with defendant, a professional engineering firm, by which defendant agreed to inspect certain state bridges pursuant to plaintiff's prime contract with the Department of Transportation (hereinafter DOT). The subcontract provided that the time period for defendant's performance was January 1, 2012 through May 31, 2014, and included a provision requiring defendant to indemnify plaintiff for certain costs and expenditures arising from defendant's errors, omissions or negligence. In March 2017, defendant's employee, Akram Ahmad, was convicted of falsifying a 2013 inspection report for one of the bridges covered by the subcontract. As a result, plaintiff incurred costs related to cooperating in the investigation, providing information and appearing and testifying at administrative and judicial hearings, and was required to reimburse DOT for sums paid to defendant for Ahmad's work. Defendant declined plaintiff's request for indemnification of these costs.
In May 2018, plaintiff commenced this action against defendant stating causes of action in negligent supervision and breach of contract, and seeking to recover its expenditures arising from Ahmad's misconduct. Defendant moved to dismiss the complaint as time-barred under CPLR 214 (6). Supreme Court granted the motion in part by dismissing the negligent supervision claim and the breach of contract claim to the extent that it was based upon defendant's failure to properly inspect the bridge. The court partially denied the motion to dismiss the breach of contract claim to the extent that it was based upon defendant's failure to comply with its contractual obligation to indemnify plaintiff for its reimbursement to DOT. To the extent that plaintiff sought indemnification for its counsel fees and costs related to investigations and judicial and administrative proceedings, the breach of contract claim was dismissed, as the court found that these were direct claims subject to the three-year limitations period of CPLR 214 (6), and were therefore time-barred. These cross appeals ensued.
A three-year statute of limitations governs "action[s] to recover damages for malpractice, other than medical, dental or podiatric malpractice, regardless of whether the underlying theory is based in contract or tort" (CPLR 214 [6]; see City of Binghamton v Hawk Eng'g P.C., 85 AD3d 1417, 1418 [2011], lv denied 17 NY3d 713 [2011] ). Although a six-year limitations period ordinarily applies to breach of contract claims, such a cause of action will be construed as a professional malpractice claim subject to the three-year limitations period "to the extent that the allegations are that [the defendant] failed to perform its contractual services in a professional, nonnegligent manner" (New York State Workers' Compensation Bd. v SGRisk, LLC, 116 AD3d 1148, 1150 [2014]). In determining whether a cause of action denominated in tort or contract should be so construed, "[t]he pertinent inquiry is thus whether the claim is essentially a malpractice claim" (Matter of R.M. Kliment & Frances Halsband, Architects [McKinsey & Co., Inc.], 3 NY3d 538, 542 [2004]).
Here, Supreme Court determined that plaintiff's claim for negligent supervision and also its claim for breach of contract — to the extent that it is based upon defendant's failure to properly perform the bridge inspection — sound in the nature of professional malpractice, and are therefore subject to a three-year limitations period. Plaintiff does not directly challenge that finding, but rather challenges Supreme Court's determination that these claims are untimely. Relying on precedent addressing negligence and breach of contract claims that do not involve professional malpractice, plaintiff asserts that neither claim accrued until all elements of each cause of action, including damages, could be alleged (see e.g. Bond v Progressive Ins. Co., 82 AD3d 1318, 1320-1321 [2011]). Plaintiff asserts that the claims are timely because they could not be pleaded until the damages resulting from Ahmad's actions in 2017 were in fact incurred, and that the payments of those costs, fees, and expenses were made less than three years before commencement of this action in 2018.
We reject this argument, as it disregards the well-established rule that "a claim for professional malpractice against an engineer or architect accrues upon the completion of performance under the contract and the consequent termination of the parties' professional relationship" (Town of Wawarsing v Camp, Dresser & McKee, Inc., 49 AD3d 1100, 1101-1102 [2008]; accord City of Binghamton v Hawk Eng'g P.C., 85 AD3d at 1418; see 797 Broadway Group, LLC v Stracher Roth Gilmore Architects, 123 AD3d 1250, 1252 [2014]; Mary Imogene Bassett Hosp. v Cannon Design, Inc., 84 AD3d 1524, 1525 [2011]). The operation of this principle is not altered by the fact that the extent of damages resulting from professional malpractice may not be known at the time of the termination of the professional relationship between the parties (see e.g. City of Binghamton v Hawk Eng'g P.C., 85 AD3d at 1417-1418). We are constrained to find that a contrary rule would vitiate the purposes of the 1996 amendments to CPLR 214 (6). The amendments altered the former rule in nonmedical professional malpractice actions that had relied upon the proposed remedy rather than the theory of liability in determining the statute of limitations. These amendments were intended "to reduce potential liability of insurers and corresponding malpractice premiums, and to restore a reasonable symmetry to the period in which all professionals would remain exposed to a malpractice suit" (Matter of R.M. Kliment & Frances Halsband, Architects [McKinsey & Co., Inc.], 3 NY3d at 542 [internal quotation marks and citations omitted]; see Ackerman v Price Waterhouse, 84 NY2d 535, 541-542 [1994]). Thus, to the extent that plaintiff's claims sound in professional malpractice, they are deemed to accrue when such a claim would accrue. Here, the subcontract specified a completion date in May 2014 and did not contemplate any continuing professional responsibilities beyond that date. Thus, Supreme Court correctly determined that the parties' professional relationship terminated in May 2014, that the negligent supervision cause of action and the aspect of the breach of contract cause of action that sounds in professional malpractice accrued at that time, and that these claims are time-barred because the action was not commenced within three years thereafter (see CPLR 214 [6]; 797 Broadway Group, LLC v Stracher Roth Gilmore Architects, 123 AD3d at 1252; City of Binghamton v Hawk Eng'g P.C., 85 AD3d at 1418-1420; compare Town of Wawarsing v Camp, Dresser & McKee, Inc., 49 AD3d at 1102-1104).
Turning to plaintiff's contractual indemnification claim, the subcontract required defendant to "indemnify and save harmless and defend [DOT and plaintiff] . . . from and against any claim, demand or cause of action of every name or nature arising out of the error, omission or negligent act of [defendant]" or its employees. Plaintiff alleged that defendant breached this provision by refusing to reimburse and indemnify plaintiff for the costs it incurred as a result of Ahmad's misconduct. With regard to plaintiff's claim for the reimbursement it paid to DOT for Ahmad's work, Supreme Court determined that defendant's voluntary contractual agreement to indemnify plaintiff was not an "ordinary professional obligation" of an engineer (Matter of R.M. Kliment & Frances Halsband, Architects [McKinsey & Co., Inc.], 3 NY3d at 542) and that this claim was thus governed by a six-year limitations period that accrued upon that payment and was not time-barred (see CPLR 213 [2]; McDermott v City of New York, 50 NY2d 211, 217-218 [1980]). We agree. The cause of action for indemnification is not "a disguised professional malpractice claim subject to a three-year statute of limitations, as it does not allege that [defendant's] professional services were negligently performed, but instead alleges a breach of the [subcontract]" consisting of defendant's separate failure to comply with its indemnification obligation (State of N.Y. Workers' Compensation Bd. v Madden, 119 AD3d 1022, 1027 [2014]; see New York State Workers' Compensation Bd. v SGRisk, LLC, 116 AD3d at 1151). Contrary to defendant's argument, this conclusion is not altered by the fact that the complaint alleges that plaintiff incurred these costs "as a result of its negligent supervision of . . . Ahmad." "[T]he indemnity claim is a separate substantive cause of action, independent of the underlying wrong" (McDermott v City of New York, 50 NY2d at 218). As such, the statute of limitations principles that apply to indemnification claims are controlling, "whatever the underlying breach of duty for which indemnification is sought" (id.; see Varo, Inc. v Alvis PLC, 261 AD2d 262, 264-265 [1999], lv denied 95 NY2d 767 [2000]).
We reject defendant's argument that it cannot be required to indemnify plaintiff for its reimbursement to DOT for Ahmad's work because DOT is also an indemnitee and, thus, is not a third party outside the subcontract. It is a familiar principle that a cause of action for common-law indemnification must be based upon a defendant's breach of duty to a third party (see e.g. State of N.Y. Workers' Compensation Bd. v Madden, 119 AD3d at 1024; Germantown Cent. School Dist. v Clark, Clark, Millis & Gilson, 294 AD2d 93, 99 [2002], affd 100 NY2d 202 [2003]). However, the instant matter does not involve common-law indemnification, in which "a contract to reimburse or indemnify is implied by law" (McDermott v City of New York, 50 NY2d at 217 [internal quotation marks and citation omitted]). Instead, the scope of defendant's obligation is governed by the parties' intent as revealed by the plain language of the indemnification provision that they agreed upon (see Matter of 2-4 Kieffer Lane LLC v County of Ulster, 172 AD3d 1597, 1601 [2019]; Crossroads ABL LLC v Canaras Capital Mgt., LLC, 105 AD3d 645, 645 [2013]). Nothing in the provision's broad language, which requires defendant to indemnify plaintiff "against any claim, demand or cause of action of every name or nature," reveals that the parties intended to exclude claims such as this from its coverage or to limit its scope to breaches of duty to third parties. Instead, the parties "chose to use highly inclusive language in their indemnification provision, which they chose not to limit by listing the types of proceedings for which indemnification would be required" (Crossroads ABL LLC v Canaras Capital Mgt., LLC, 105 AD3d at 646; accord HealthNow N.Y., Inc. v David Home Bldrs., Inc., 176 AD3d 1602, 1605 [2019]).
For the same reasons, we disagree with Supreme Court's finding that the indemnification provision does not cover plaintiff's counsel fees and other expenses incurred in the course of the investigation and subsequent proceedings arising from Ahmad's misconduct. Like the claim for reimbursement of plaintiff's payment to DOT, this claim is not subject to CPLR 214 (6), as it does not allege negligence in performing professional obligations and thus is not "essentially a malpractice claim" (Matter of R.M. Kliment & Frances Halsband, Architects [McKinsey & Co., Inc.], 3 NY3d at 542). Further, as previously discussed, the fact that plaintiff's expenditures did not arise from a breach of duty to a third party does not exclude them from the scope of the parties' broadly-phrased indemnification agreement. Nothing in the provision expressly excludes counsel fees or other direct expenditures on plaintiff's part. On the contrary, the provision requires defendant to "indemnify and save harmless and defend" plaintiff (emphasis added), revealing that the parties contemplated legal costs arising from defendant's errors, omissions or negligence as part of the provision's scope.[FN1] Accordingly, this aspect of plaintiff's indemnification claim should not have been dismissed (see Matter of 2-4 Kieffer Lane LLC v County of Ulster, 172 AD3d at 1601; Crossroads ABL LLC v Canaras Capital Mgt., LLC, 105 AD3d at 646).
Clark, Mulvey, Pritzker and Reynolds Fitzgerald, JJ., concur.
ORDERED that the order is modified, on the law, without costs, by reversing so much thereof as partially granted defendant's motion to dismiss plaintiff's breach of contract cause of action to the extent that it sought to recover certain counsel fees and costs as set forth herein; motion denied to that extent; and, as so modified, affirmed.



Footnotes

Footnote 1: In a separate provision, the subcontract requires the parties to pay their own counsel fees and court costs arising from any intra-party dispute directly between plaintiff and defendant.